Good morning, Your Honors. My name is Tina Rippey, and I represent the appellant, Mr. Graciano-Cabanilla. I'd like to, this morning, focus on the government's cross-appeal, which is the issue of whether or not the district court was required to enhance the sentence with regard to the two-level increase for obstruction of justice. Before you do that, ma'am, could I just clarify one matter with you on your appeal, which had to do with the admission of the ledger, the Payo ledger that was within the address book? Right. In your brief, you really didn't address the exception to the hearsay rule that apparently the district court relied upon. You just basically said it's hearsay, but didn't address the district court's determination that it was an exception applied, which was a statement of a co-conspirator. Correct, which the government brought up in its answering brief. Well, that was an issue that was in the district court. That's the exception that the district court relied on. Is that correct? Well, I saw that as sort of a two-fold argument. It seemed like it did when I read the transcript of the hearing. Right. And I don't think that the district court actually addressed the issue of whether or not the Payo ledger was hearsay in and of itself because it was offered to prove the truth of the matter. And the district court seemed to make a decision based upon a co-conspirator statement, and then the defense, again, brought up the argument of the Payo ledger being hearsay because it was offered to prove the truth of the And then there wasn't really any further indication from the district court at that point that the elements had been met. What the district court said, and I think it's in the excerpts of the records from the transcript of the ruling, is that if the government met all those, then it came in. And my argument was really based upon the fact that I thought it was hearsay. It was hearsay. I gather by the way you approached it, though, you didn't feel that there was any exception that applied. Right. Okay. But yet you never addressed that point. Well, simply because I despise writing Anders briefs, and I wanted to bring it to the court's attention and let the government go ahead with their co-conspirator statement, that comes in. It's not hearsay. If the elements are met, yes. What did you say? If the elements are met. And at the time, there was a question in the district court whether or not the elements could be met because the black book was found on someone other than the defendant. And there was a question as to whether the agent that was going to be testifying about it could testify where it was found and the chain of custody as to whether or not it was – could come in and meet all the requirements of the elements of co-conspirator statement. Was there an issue with your client or, you know, was a member of the conspiracy? Well, I think that that was part of where I was going in the brief, is that I didn't really think that he was a member of the conspiracy simply because of how limited his actions were within the whole scheme. He brought the truck. He remained pretty much on the outside waiting for the truck to be loaded, and then he left with the truck. It doesn't take much. All you need is, what, a slight connection. Right. And where I was going – That was an opinion of Walter Ely's. All right. Where I was going with the hearsay or the – in my brief, that the pay-o-ledger was just pure hearsay, was that I didn't get such a close connection between identification of Mr. Graziano-Cabanilla as Ramon Spink, and I think that that's where I was going. Okay. I was just curious on your approach. That's all. I think that the first thing that I'd like to point out to the Court is that the base offense level, which the district court determined in this case to be – I believe it was 26 – would have led to a range of 63 to 78 months. And Mr. Graziano-Cabanilla was sentenced to 85 months, and that was based on the two-level enhancement for endangerment, which that guideline range was 78 to 97 months. What the government has requested is another two-level enhancement, which would bring the guideline range to 97 to 121 months. And I think that there's two problems with that. Number one, Judge Hupp passed away in January of 2004. So if this Court deems to send this case back for resentencing, we've got a real problem in that we've got to – It goes back to another district court judge. It goes back to a district court judge, but it goes back with the transcripts. And they're just – as you know, by reading the transcripts, they're just devoid of any of the personal nuances that go on in a trial. They're going to be devoid of anything that Judge Hupp would have recognized to have happened. Unfortunately, it does happen. But I think it's just manifest injustice in this case, because the new sentencing judge is not going to know what the jury's reaction was, what the testimony was, whether the jury was – Why don't you tell us why Judge Hupp was correct in not applying the guideline? Okay. I think he was correct in that he had the discretion to say, you know, this was so outlandish that it couldn't have made – Well, let's back up a bit further. Did he make a finding – findings that would support perjury? He didn't, did he? No. I don't think he did.  So if he didn't make necessary findings to support a perjury enhancement, then he wasn't obligated. Our case law seems to say that if you make findings – you know, if you determine that there was obstruction of justice for various reasons, one of which could be perjury, and if you determine that there has been obstruction of justice, our cases say that there's no discretion but to impose the enhancement. And I don't think that Judge Hupp made such a finding. Okay. Well, that's a good argument. You might want to reserve the rest of your time. If I might just point out, I did submit a 28-J letter on the issue of the Blakely case and how it might apply to this particular case. Please have that. Thank you. Good morning, Your Honors. May it please the Court. Daniel Saunders for the United States. And I was the trial counsel in this matter as well. How are you, Mr. Saunders? I'm fine. Thank you, Your Honor. Good to see you. We have, I think starting a couple of minutes ago, a far more interesting argument than we have here going on in Washington, D.C., which will, of course, address the Blakely issues that relate to the government's cross-appeal as well as the defendant's 28-J letter. So I think both parties are in agreement in asking the Court to defer submission of the sentencing issue until the Supreme Court comes down with its long-awaited guidance in Booker and Fanfan. With respect to the cross-appeal, however, assuming that the Supreme Court holds that the guidelines are unaffected by Blakely or that we're still in the same playing field that we were on at the time this case was briefed, then, of course, we do have the issues of whether the Court did make sufficient findings to warrant an obstruction enhancement. It's the government's position that those findings, while perhaps not a model of clarity, do encompass the elements that are set forth in Dunnegan. The Court clearly found the defendant's testimony was untruthful. And Judge Hudson has stated that. Can you give me a transcript reference for that statement? For the statement that the defendant's testimony was untruthful? Whatever it is, you're relying on a plaintiff for some kind of finding of perjury, right? At government's excerpt pages 145 to 148. 145 to 148, okay. We have first the district court's statement that, I agree there was some untruth in the trial testimony, followed shortly thereafter by, I would not disagree that there were untruths in Mr. Graciano's testimony. Later on, on GER 146, he describes the defendant's testimony as inherently incredible testimony. On page 148, I suggested to Judge Huff that the defendant's testimony was incredible, was ludicrous, and it appears that the Court has agreed that it was ludicrous on its face. Judge Huff stated yes, signaling agreement. Is that in his material as well? Did he make a finding of materiality? I did question Judge Huff for purposes of the argument as to whether or not the Court was questioning whether the testimony was material or willful. And Judge Huff replied, not really, no. What does that mean? Well, to me at the time it indicated that he was not questioning the issues of materiality. How about now? I believe it indicates he was not questioning the issues of materiality or willfulness. But later on says, well, no jury would have relied on that testimony. It was so, it was so ridiculous that no, no reasonable juror would rely on that. Which is where the government. Which led me to believe that he was not really making a finding, a true finding of materiality. Well, he was avoiding, I believe, the finding of materiality because he was applying the incorrect legal standard for materiality. And in focusing on whether a jury would have accepted that. That suggests that it should go back to let a district court judge, assuming we're on the same playing field, that it should go back so the district court judge can make an appropriate finding on materiality. I think that's correct, Your Honor. Because there were really three errors of law that I believe Judge Hutt made in this case. The first was applying the incorrect standard of materiality. Which would suggest that the more outlandish, the more ludicrous, the more false a defendant's testimony is. Your Honor, I think you're applying the incorrect standard of materiality. Did you do that? We briefed the appropriate standard of materiality in our sentencing position. And we argued with respect to, argued orally. When he made those remarks, did you get up and say, Your Honor, you're applying the wrong standard of materiality? At the sentencing hearing, I believe that what I articulated was the mandatory measure of the enhancement, rather than the materiality standard, Your Honor. I don't believe I articulated the materiality standard orally at the hearing. I believe I focused on the... Judge Hutt can't remember any mistakes he's made in the past. He's a pretty scholarly man. He was a really fine judge. Very careful and a very fine judge. I was privileged to try three cases before him. And, you know, had a good heart, too. But he was always under the impression that that enhancement was discretionary, right? That is clear, certainly, from the transcript. And that is also an error of law. That if he, even if he did make the findings, Judge Hutt indicated it was his belief, and defense counsel fostered that belief, that it was a discretionary enhancement. So assuming the guidelines stay in place, then the issue here is whether or not there is a sufficient finding of perjury to support, in effect, a mandatory imposition of the enhancement, right? Well, I think there are two alternatives. If the Court were to find that the findings were there on the record and were clear, then the Court could, on its own, order that on remand, that that enhancement be applied. At a minimum, however, we believe the Court should remand, obviously to a different district judge, regretfully at this time, with instructions to consider the perjury enhancement, applying the correct legal standard.  Yes, Your Honor. With respect to the errors which you contend the district court made? That's correct, Your Honor. All right. With respect to the standard of materiality, with respect to the mandatory nature of the enhancement, and also with respect to the Court's apparent belief in its statement that it was free to not apply the enhancement if it believed that the guideline offense level was sufficiently high already. I gather you cited our cases to Judge Hupp. Yes, Your Honor. That say that if you find an obstruction of justice, then you have to impose the enhancement. I did cite those. And right at the end, he asked, read the guideline to me. And apparently you read the guideline to him, and he said, I'm not going to apply it. I read the guideline. I provided the site to the U.S. Supreme Court's case in Dunnegan, which addressed the mandatory nature of the enhancement, as well as to this Court's decision, and I believe it was Avila that I cited to the Court, all of which support the mandatory nature of the enhancement. And to address defense counsel's concern with respect to a remand, yes, to some extent, the new district judge would be looking at a cold record, as Your Honors do, on appeal. However, the district court would be aided in that by Judge Hupp's own comments at sentencing, because Judge Hupp, who presided over the trial and heard the defendant's testimony, made very clear, I believe, his belief at trial, his belief at sentencing, that the defendant had lied through his teeth throughout his testimony on the stand, that it was inherently incredible testimony. But he also felt that the two-level adjustment wasn't appropriate in this case. Yes, but he gave two reasons for that. Well, that comes through very clear when I read it. I mean, he didn't want to impose it. He didn't think it was warranted. He felt that the range that was supported by the jury's verdict was more than adequate to punish this guy for whatever he did, and he didn't think the enhancement was appropriate. If Judge Hupp had said, I don't believe the enhancement is appropriate because applying the correct standard of materiality, I don't think it was material, or because I don't think it was willful, the government would not be here appealing, cross-appealing this matter. But Judge Hupp gave two reasons for not applying the enhancement, and it's the government's position that both of those reasons given constitute errors of law. The first, that it was never going to be accepted by a jury, where the correct standard is if believed, would it tend to influence the verdict, which clearly in this case had the jury believed the defendant's disclaimer of knowledge, that clearly would have influenced the verdict. That was the only issue at trial. Second, Judge Hupp's statement that I have a hard time applying this enhancement because I think we're at a high enough offense level or a too high offense level, I believe he said already, which, again, regardless of what our personal views of the guidelines might be, the case law from this circuit is clear that district judges are not free to disregard the guidelines simply because of dissatisfaction with the resulting sentence. So it's not just the fact that Judge Hupp declined to apply the enhancement, but it's the fact that he gave two justifications for that declination, neither of which the government believes are properly supported by this Court's law. And if the Court has no questions with respect to the ledger issue on the direct appeal, the government would submit. Thank you. Any rebuttal? I'm sorry. May I make one final point with respect to the Blakeley issue? And I didn't address this in the 28J letter, but the defendant is facing a five-year mandatory minimum sentence, just so that's clear that under this Court's decision in Castro, we believe that would constitute adequate ground to defer submission of these sentencing issues. Any rebuttal? Just a couple of points. May I ask you a question? Because Rippey is kind of an unusual name, isn't it? Rippey? Yes, Your Honor. Is there a Bill Rippey, you know? I think there's a lot of Rippeys around the United States that I've come into contact with. You're only the second one I've ever met, yeah. I went to UCLA with a guy named Rippey. Yeah. Family's been here in Southern California for quite a time. Went in the Navy, yeah. Quite a time. Okay. Well, I'll see if I can find it. Go ahead. I wanted to just point out to the Court a couple of things, that there was a very long discourse between Judge Hupp and Mr. Saunders regarding materiality and whether or not the enhancement was mandatory based on a finding of materiality. And I think Judge Hupp clearly in this discourse indicates to Mr. Saunders throughout that whole pages 145 through, I think it ends on 150, that he just wasn't persuaded that there was materiality in the statements of the defendant and that he was not going to apply the obstruction of justice enhancement based on that. Okay. Thanks. That response is admitted. And we've come to number three. Kevin Lamont Wilson.
judges: Pregerson, Tashima, Paez